Elizabeth M. Rotenberg-Schwartz (ER 2607)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CAI INTERNATIONAL, INC.,

          Plaintiff,

    v.

MEGAFLEET (PRIVATE) LIMITED,
INSHIPPING (PRIVATE) LIMITED, INSHIP
(PRIVATE) LIMITED, INSERVEY
PAKISTAN (PRIVATE) LIMITED,
MEGAIMPEX PAKISTAN (PRIVATE)
LIMITED, MEGA IMPEX (PRIVATE)
LIMITED, MEGATECH (PRIVATE)
LIMITED, MEGATRANS PAKISTAN
(PRIVATE) LIMITED, INTRA 21
(PRIVATE) LIMITED, INTRA TWENTY
ONE (PRIVATE) LIMITED, MSC
PAKISTAN (PRIVATE) LIMITED, FORBES
FORBES CAMPBELL & CO (PRIVATE)
LIMITED, M-LOG (PRIVATE) LIMITED,
FORBES SHIPPING (PRIVATE) LIMITED,
FORBES LATHAM (PRIVATE) LIMITED,
FORBES TELECOMMUNICATIONS
(PRIVATE) LIMITED, FORBES TELECOM
(PRIVATE) LIMITED, MEGATRAVEL
PAKISTAN (PRIVATE) LIMITED,
SEACON (PRIVATE) LIMITED, SEALOG
(PRIVATE) LIMITED, SEAEXPRESS
(PRIVATE) LIMITED, FORBES LOGISTICS
(PRIVATE) LIMITED, FORBES LOGICOM
(PRIVATE) LIMITED, MEGARAIL
(PRIVATE) LIMITED, MEGATRANSPORT
(PRIVATE) LIMITED, FORBES SHIPPING
COMPANY (PRIVATE) LIMITED, M.
HABIBULLAH KHAN, MEGAFEEDER
(PRIVATE) LIMITED,

          Defendants.

No. 07-CV-3728(LLS)

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION TO VACATE THE ORDER OF**
**MARITIME ATTACHMENT**

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

Plaintiff CAI International, Inc. ("CAI") entered into two ocean cargo container lease agreements (the "Agreements"), with "Megafeeder (Private) Limited and Mega & Forbes Group of Companies" ("Lessees").  Declaration of Elizabeth M. Rotenberg-Schwartz, dated June 22, 2007, ("Rotenberg-Schwartz Decl.") Exs. A, B.  The Agreements provided CAI would lease ocean cargo containers to Lessees for use in maritime transport.

Defendant M. Habibullah Khan, the Chairman & Managing Director of the Mega & Forbes Group of Companies ("Mega & Forbes Group"), personally negotiated the agreements on Defendants' behalf.  See Rotenberg-Schwartz Decl. Ex. J (http://www.mega-intl.info/megaasp/htm/chmsg/ch_message.asp).  Khan represented to CAI, through CAI's Korean agent, Wan Hee Lee (also known as "Tony"), that he had authority to negotiate the terms of the Agreements on Lessees' behalf and he did in fact do so.  See Declaration of Wan Hee Lee, dated June 22, 2007 ("Lee Decl.") ¶¶ 4, 9.  Khan copied Mr. Shakeel Hyder, the Senior Manager of Megafeeder (Private) Limited ("Megafeeder") and Mega & Forbes Group on e-mails regarding the negotiations.  Id. ¶ 8.  Hyder signed the contracts.  Rotenberg-Schwartz Decl. Ex. A at 7, Ex. B at 8.

Shortly after the Agreements were executed, CAI made the ocean cargo containers available to the Lessees.  Declaration of Frederic Bauthier, dated June 21, 2007 ("Bauthier Decl.") ¶ 2.  Beginning on June 8, 2006 and continuing through February 13, 2007, Khan made at least eight substantial payments of Lessee's obligations under the Agreements from bank accounts that appear to stand in his name alone.  See Bauthier Decl. at ¶ 3, Ex. A.

On April 13, 2007, despite repeated demands, Lessees ceased payments to CAI and materially breached their obligations under the Agreements.  Bauthier Decl. at ¶ 4.  On March

26, 2007, Mr. Khawaja Shams-ul-Islam, Defendants' Pakistani attorney, repudiated the agreement on behalf of Megafeeder asserting CAI has no contract with the company. Rotenberg-Schwartz Decl. Ex. D.  On April 13, 2007, CAI terminated the Agreements and requested that Mr. Shams-ul-Islam, as Megafeeder's representative, sign a letter authorizing release of CAI's containers.  Rotenberg-Schwartz Decl. Ex. E.  On April 16, 2007, Megafeeder's lawyer responded stating that he refused to sign a letter directing release of the containers. Rotenberg-Schwartz Decl. Ex. F.

As of April 30, 2007, Lessees were indebted to CAI in the principal amount of $358,026.00 for rental and lease related charges.  Additional rental continues to accrue on leased containers as of that date at the rate of $2,410.80 per day.  As of April 30, 2007, the contractual replacement value of ocean cargo containers covered by the Agreements was $7,532,000.00 for which Lessees are liable.

Recognizing that it had no way to secure payment from Defendants, CAI commenced this action on May 11, 2007.  On May 11, 2007, this Court issued an *ex parte* Order for Process of Maritime Attachment ("Order"), which CAI served on the garnishee banks named in the Order. On or about May 16, 2007, BNP Paribas seized an electronic fund transfer ("EFT") in the amount of $193,880.13 originating from Defendant MSC Pakistan (Private) Limited ("MSC"). Rotenberg-Schwartz Decl. at ¶ 15.  On May 21, 2007, Deutsche Bank seized an EFT in the amount of $31,292.00 for the benefit of Defendant Khan.  Id. at ¶ 16.  On May 18 and 21, 2007, respectively, CAI promptly notified Defendants MSC and Khan of the seizures in accordance with Local Admiralty Rule B.2.  Rotenberg-Schwartz Decl. Exs. G, H.  Defendants have not posted any security to effect release of the attachment.  Id. at ¶ 19.  On May 19, 2007, Mr.

Shams-ul-Islam sent a letter motion *ex parte* to the Honorable Louis Stanton seemingly requesting that the Court vacate the Order ("Letter Motion").  Id. Ex. I.

The funds belonging to Defendants' that CAI has attached pursuant to the Order, provide CAI with some small measure of security against any judgment that it may be awarded in the action pending against Defendants.  Release of the funds will prejudice CAI requiring it to chase Defendants around the world seeking compensation for Defendants' material breach of the Agreements.  Defendants have offered no meritorious reason to vacate the Order.

## ARGUMENT

### I.
### DEFENDANTS' REQUEST TO VACATE THE ORDER OF ATTACHMENT SHOULD BE DENIED

**A.     Defendants' Motion Should Be Rejected Pursuant to Local Rule 1.3(c).**

Mr. Shams-ul-Islam's Letter Motion is procedurally defective.  Pursuant to the Local Rules of this Court, "[a] member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate, upon motion . . . [o]nly an attorney who has been so admitted or who is a member of the bar of this court may enter appearances for parties."  Local Rule 1.3(c).  Mr. Shams-ul-Islam is not admitted to practice law in the United States and has not filed a *pro hac vice* petition. Letter Motion at 3.  Contrary to Mr. Shams-ul-Islam's representations to this Court, his clients have, in fact, been able to retain counsel.  Freehill, Hogan, & Mahar LLP has appeared on behalf of his client MSC.  Compare id. with Docket No. 7 (Notice of Restricted Appearance Pursuant to Rule E(8) filed by MSC Pakistan (Private) Limited).  Since Mr. Shams-ul-Islam has not properly appeared in the Southern District and his clients have demonstrated their ability to obtain counsel in New York, the Court should not hear his "motion."

**B.      Defendants Have Not Satisfied The Grounds For Vacating An
Order of Attachment Pursuant to Fed. R. Civ. P. Supplemental Rule E.**

The grounds for vacating a Rule B(1) attachment are limited.  To succeed, Defendants

must show that either (i) they are "present in a convenient adjacent jurisdiction;" (ii) they are

"present in the district where the plaintiff is located;" or (iii) "the plaintiff has already obtained

sufficient security for a judgment."  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460

F.3d 434, 436 (2d Cir. 2006).  Defendants have not argued the Order should be vacated *on any of*

*these grounds* nor have they submitted any evidence that even arguably supports vacation of the

attachment.

**C.      Defendants Entered Into A Valid Maritime Agreement.**

Defendants apparently claim the Mega & Forbes Group is not a legal entity in Pakistan

and therefore, they "have no privity of contract with the Plaintiff" because the Agreements were

"neither signed by the Companies mentioned as Defendants before your honour nor by Mr.

Habibullah Khan in his personal capacity."  Letter Mot. at 1-2.  This is a diversionary tactic by

Defendants to evade liability.  Even a cursory review of the Mega & Forbes Group website

belies Defendants' assertion.  See, e.g., Rotenberg-Schwartz Decl. Ex. K (http://www.mega-

intl.info/megaasp/htm/aboutus.asp) ("Mega & Forbes group (MFG), a diversified business

conglomerates which has undergone rapid advancement since its inception. During past 25 years

Mega & Forbes has steadily diversified its core activities by venturing into new business and

continued to expand and successfully forged ahead in terms of revenue/turnover + today

achieving over a billion US dollar's.").  Based upon its own representations, Mega & Forbes

Group is clearly a corporate entity in Pakistan.  Moreover, even if the Mega & Forbes Group is

not a legal entity in Pakistan, the named Defendants (all legal entities in Pakistan), excepting

Khan, certainly comprise the Mega & Forbes Group.  See Rotenberg-Schwartz Decl. Ex. L

(http://www.mega-intl.info/megaasp/htm/Corp_Structure.asp); Lee Decl. Ex. D

("MEGAFEEDER is a Private Limited Company specifically formed as a regional carrier, this

company will be converted in to a Public Limited [company] in the next 24 months.")

Defendants' organizational chart also indicates that Khan, as Chairman and Managing Director of

the Mega & Forbes Group, oversees all of the named corporate Defendants. See Rotenberg-

Schwartz Decl. Ex. L (http://www.mega-intl.info/megaasp/htm/Corp_Structure.asp).

Khan negotiated the Agreements. as Chairman & Managing Director of the Mega &

Forbes Group. Hyder, the Senior Manager of Megafeeder and Mega & Forbes Group, signed

them. Lee Decl. at ¶¶ 9, 16. Khan kept Hyder abreast of these negotiations by copying him on

e-mails regarding their development. Lee Decl. ¶ 8. During the course of the negotiations, Khan

and Hyder provided CAI with Mega & Forbes Group's financial information, details regarding

the logo design that was affixed to the containers, insurance, and lease term length. Lee Decl. ¶

9, Exs. A, C, F. Clearly, the Agreements were signed on behalf of Defendants and therefore they

are individually liable. Puro Filter Corp. of Am. v. Trembley, 266 A.D. 750, 750 (N.Y. App. 2d

Dep't Div. 1943) (where defendant entered into contract in name of corporate entity that did not

exist "defendant individually became obligated under the contract entered into in the name of a

fictitious or nonexistent principal.") (citations omitted); Howells v. Albert, 236 N.Y.S.2d 654,

657-58 (Sup. Ct., Nassau County 1962) ("The rule is that a person who enters into a contract in

the name of a fictitious or nonexistent principal renders himself individually liable on the

presumption that the parties intended to create an enforceable obligation.") (citations omitted).

Defendants present assertion to the contrary is a further attempt to avoid liability and should not

be allowed.

**D.    Even If Hyder Did Not Have Actual Authority To
      Execute The Agreements, He Had Apparent Authority.**

Defendants seemingly argue that Mr. Shakeel Hyder did not have actual authority to sign

the Agreements on behalf of Defendants.  The acts of a purported agent acting outside its

authority will bind the principal if, based upon some affirmative act by the principal that cloaked

the agent with the appearance of authority, a party reasonably relies on that agent's authority.  As

stated in Hallock v. State, 64 N.Y.2d 224, 231 (1984):

> Essential to the creation of apparent authority are words or conduct
> of the principal, communicated to a third party, that give rise to the
> appearance and belief that the agent possesses authority to enter
> into a transaction. The agent cannot by his own acts imbue himself
> with apparent authority.   Rather, the existence of 'apparent
> authority' depends upon a factual showing that the third party
> relied upon the misrepresentation of the agent because of some
> misleading conduct on the part of the principal -- not the agent.
> Moreover, a third party with whom the agent deals may rely on an
> appearance of authority only to the extent that such reliance is
> reasonable (internal citations and quotations omitted) (citations
> omitted);

see also, Cal. Civ. Code § 2307 ("An agency may be created, and an authority may be conferred,

by a precedent authorization or a subsequent ratification."); Rakestraw v. Rodrigues, 500 P.2d

1401, 1405 (Cal. 1972) ("A purported agent's act may be adopted expressly or it may be adopted

by implication based on conduct of the purported principal from which an intention to consent to

or adopt the act may be fairly inferred, including conduct which is inconsistent with any

reasonable intention on his part, other than that he intended approving and adopting it.")

(citations omitted).

In negotiating the contracts with CAI through Wan Hee Lee, and by copying Hyder on

various negotiation e-mails, Defendant Khan represented to CAI that Defendants intended to

enter into the Agreements and that Hyder was authorized to do so.  See, e.g., Lee Decl. Ex. F

("Tony no problem please proceed to co-lease with megafeeder will forward the signed

agreement within this week"); Lee Decl. Ex. G ("will fax tdy and forward regards…hk ssh ric pl

xecute…hk").  Therefore, even if Hyder acted outside his authority in executing the Agreements,

because he had apparent authority to execute them, Defendants' remain liable for his conduct.

Hallock, 64 N.Y.2d 224; Rakestraw, 500 P.2d 1401.

E.    **Even If Defendants Did Not Execute The
      Agreements They Were Subsequently Ratified.**

Even if this Court determines Hyder was unauthorized to enter into the Agreements on

behalf of Defendants and that Plaintiff has not shown he had apparent authority to do so,

Defendants unmistakably ratified Hyder's actions.

A principal ratifies the unauthorized actions of a purported agent if the principal is aware

of the agent's actions and the facts surrounding the agent's actions, and accepts the benefits of the

relevant transaction.  Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland, Ltd., 835 F.2d 32, 36 (2d

Cir. 1987); Berry v. Maywood Mut. Water Co. No. One, 88 P.2d 705 (Cal. 1939).  Pursuant to

the terms of the Agreements, Defendants took possession of the leased containers and made

payments to CAI.  Bauthier Decl. ¶ 2, 3.  Many of these payments were made by Khan from

bank accounts that appear to stand in his name alone.  Id. Ex. A.  In doing so, Defendants ratified

Hyder's actions.  Monarch Ins. Co. of Ohio, 835 F.2d at 36 ("Ratification requires acceptance by

the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances

indicating an intention to adopt the unauthorized arrangement.  The intent can be implied from

knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a

finding of ratification has in some way relied upon the principal's silence or where the effect of

the contract depends upon future events.") (internal quotations and citations omitted); Berry, 88

P.2d at 708 (Cal. 1939) ("when the corporation with knowledge of the contract accepts

performance and makes payments on account thereof, there is a ratification of the contract, or an estoppel to deny its validity") (citations omitted).

Since Hyder's actions were ratified by the Defendants' Chairman & Managing Director, they cannot now claim the Agreements are invalid.

## II.
## THE AGREEMENTS' FORUM SELECTION CLAUSE DO NOT PRECLUDE ISSUANCE BY THIS COURT OF A RULE B ATTACHMENT.

Defendants argue that pursuant to the forum selection clause in the Agreements this Court may not retain jurisdiction over this action.  However they misinterpret the effect of the choice of law and forum selection clause which states, in relevant part:

> This agreement is binding upon the parties, their permitted successors and assigns and shall be construed and interpreted in accordance with the laws of the United States of America and, except where inconsistent therewith, with the laws of the State of California.  With respect to any claim or controversy arising out of or relating to this agreement, the parties *consent* to the jurisdiction of the State and Federal Courts located in San Francisco, California, U.S.A

Rotenberg-Schwartz Decl. Exs. A at 9, B at 10 (emphasis added).

This forum selection clause is *permissive* rather than exclusive and its effect is to prevent a motion to transfer venue in the event a party brings an action in San Francisco.  Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 979 (2d Cir. 1993) (determining that the forum selection clause was "a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive [one]" based "solely because of the nonmandatory words the parties chose to express their agreement"); Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987) ("The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts.").  It does not, as the Defendants claim, mandate that *any claim* arising out of the parties' Agreements be brought in San Francisco.  Fireman's Fund McMgee Marine,

Underwriters v. M/V "Caroline", No. 02 Civ. 6188, WL 287663, at *3 (S.D.N.Y. Feb. 11, 2004) ("a permissive forum selection clause indicates the contracting parties' consent to resolve their disputes in a given forum, but does not require the disputes to be resolved in that forum.") (citations omitted); N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1036-1037 (9th Cir. 1995) ("[s]uch consent to jurisdiction, however, does not mean that the same subject matter cannot be litigated in any other court.  In other words, the forum selection clause in this case is permissive rather than mandatory") (citation omitted).

Courts in both California and this district have determined that *exclusive* forum selection clauses requiring the parties to litigate any underlying claims in foreign jurisdictions do not preclude a plaintiff from obtaining a maritime attachment in another forum.  See, e.g., Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627 (9th Cir. 1982) (allowing Rule B Attachment to ensure availability of security pending determination of merits in contractually selected forum); Consub Del. LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305 (S.D.N.Y. 2007) (same); Staronset Shipping Ltd. v. N. Star Navigation Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) (adopting reasoning of *Polar Shipping* to allow Rule B Attachment).  Thus, allowing Plaintiff's Rule B Attachment to stand, particularly in the context of a *permissive* forum selection clause, comports with both the Polar Shipping court's and this Court's holding in Consub stating:

> In many admiralty actions, it would be merely fortuitous if the foreign forum, selected for its neutrality and expertise, also had available assets of the defendant to ensure that a judgment rendered by that forum would be enforceable there. . . . For the court to infer that parties to a clause, which provides that all disputes under the charter shall be determined by a selected foreign court, intended that proceedings to obtain prejudgment security be limited to that foreign forum, could substantially prejudice an admiralty plaintiff, by leaving it without an effective remedy.

Consub, 476 F. Supp. 2d at 313 n. 41 (citing Polar Shipping, 680 F.2d at 633).

This Court's jurisdiction over the present Rule B attachment does not violate the forum selection clauses in the Agreements, protects Plaintiff from further prejudice, and therefore should not be vacated.

## **CONCLUSION**

The Court should deny Defendants' motion to vacate the Order.

Dated:  June 22, 2007

SHEPPARD MULLIN RICHTER & HAMPTON LLP


By _____/s/_____
            Elizabeth M. Rotenberg-Schwartz (ER 2607)
            30 Rockefeller Plaza
            Suite 2400
            New York, New York 10112
            (212) 332-3800 (Tel.)
            (212) 332-3888 (Fax)

            Attorneys for Plaintiff CAI International, Inc.