276-07/PJG/GMV
FREEHILL, HOGAN & MAHAR, LLP
80 Pine St., 24th Fl.
New York, NY 10005
(ph) (212) 425-1900
(fx) (212) 425-1901
Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAI INTERNATIONAL, INC.,<br><br>               Plaintiff<br><br>   -versus-<br><br>MEGAFLEET (PRIVATE) LIMITED, et al.<br><br>           Defendants | **07-cv-3728 (LLS)**<br><br>**MEMORANDUM OF LAW**<br>**IN SUPPORT OF MOTION TO VACATE**<br>**RULE B ATTACHMENT** |

### PRELIMINARY STATEMENT

Defendant MSC Pakistan (Private) Limited ("MSC Pakistan") submits this memorandum in support of its motion to vacate the order of attachment dated May 22, 2007. The order allowed the restraint of Defendant's property within the district in an amount up to and including $7,890,026.00. For the reasons which follow, the Order should be vacated in its entirety.

### SUMMARY OF FACTS – PROCEDURAL BACKGROUND

On May 11, 2007, Plaintiff CAI filed a Verified Complaint against twenty-five (25) different companies which CAI alleged comprised the "Mega & Forbes Group of Companies". (*See* Complaint ¶5). CAI alleged that "the Group" had entered into two contracts for the lease of cargo containers from CAI. CAI also alleged that and Mr. M. Habib Ullah Khan ("Mr. Khan") was personally liable under the Contract because he is a shareholder and officer of the corporate

defendants and because he made payments under the contracts through his personal bank account. (Complaint ¶¶ 16-18).

CAI applied for an attachment under Supplemental Rule B in respect to the claims identified in the Complaint. The Court issued an order of attachment for $7,890,026.00 against all defendants (including the 25 companies and Mr. Khan individually) in respect to CAI's claims for: (i) $358,026 for rental and lease related charges; and (ii) $7,532,000 representing the contractual replacement value of the containers which had purportedly been delivered under the contracts and not returned. (*Compare* Complaint and Order of Attachment).

On May 21, 2007, CAI filed an Amended Complaint. The substance of the allegations in the Amended Complaint were essentially the same as those of the original complaint, but CAI added as a defendant Megafeeder (Private) Limited, whose name appears on the two contracts at issue. (*See* Amended Complaint). With respect to Mr. Khan, the Amended Complaint alleges that he is also the Chairman and Managing Director of the 25 companies comprising the "Group." (Amended Complaint ¶16). Based upon the allegations of the Amended Complaint, the Court issued an amended order of attachment on May 22, 2007, which authorized the restraint of the defendants' property within the district, again up to the amount of $7,890,026, which was comprised of the claim for outstanding rental charges and the replacement value of the containers. (*See,* Amended Order of Attachment).

Pursuant to the attachment order, two wire transfers were restrained to date including a transfer of $193,880.13 and $31,292.00. MSC Pakistan has made a restricted appearance in this case pursuant to Supplemental Admiralty Rule E(8) and now seeks a vacatur of the order of attachment pursuant to Supplemental Admiralty Rule E(f)(4).

## POINT I

### THE STANDARDS UNDER RULE E(F)(4)
### WARRANT VACATUR OF THE ATTACHMENT

An order of maritime attachment and garnishment under Supplemental Admiralty Rule B[1] is issued upon a minimal *prima facie* showing, which is typically made *ex parte*. *See Ullyses Ship. Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp.2d 318 (S.D.N.Y. 2006); *Deiulemar Compania Di Navigazione*, 2005 U.S. Dist. LEXIS 40783 (noting the ease with which Rule B is used).

Once property has been restrained, though, "any person claiming an interest" in the attached property may request under Rule E(4)(f) a hearing to have the attachment vacated or request other relief. *See T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F.Supp.2d 310, 313 (S.D.N.Y. 2006). At the hearing, it is the attaching plaintiff who bears the burden of showing why the attachment should not be vacated. Rule E(4)(f) provides specifically that:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which ***the plaintiff shall be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

(emphasis supplied).

---

[1] Supplemental Admiralty Rule B states, in relevant part:

> If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process. . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

Rule E does not specify what form the post-attachment hearing must follow, and the nature and scope of the hearing depends upon the issues in controversy. *Salazar v. The Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 169 F.Supp.2d 1341, 1357-59 (M.D.Fl. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff...to show why the attachment should not be vacated").   At the Rule E(4)(f) hearing, the defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceeding." *OGI Oceangate Transp. Co. v. RP Logistics*, No. 06-9441 (RWS), 2007 U.S. Dist. Lexis 46841 (S.D.N.Y. 6/21/07).

The courts are unanimous in holding that once a defendant seeks relief under Rule E(4)(f), the burden of sustaining the attachment rests squarely with the plaintiff. *See, e.g.,* Fed. R. Civ. Proc. E Advisory Comm. Note; *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F.Supp.2d 318 (S.D.N.Y. 2006) overruled on other grounds; *Aqua Stoliship Ltd. v. Gardiner Smith Pty Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006); *Seaplus Line Co. v. Bulkhandling Handymax AS*, 05 cv 4813 (JGK), 2005 U.S. Dist. LEXIS 33346 (S.D.N.Y. Dec. 13, 2005); *Allied Maritime, Inc. v. The Rice Corp.*, 04 cv 7029 (SAS), 2004 U.S. Dist. LEXIS 20353, 2004 AMC 2450 (S.D.N.Y. 10/12/04); *Bay Casino, LLC v. M/V ROYAL EMPRESS*, 5 F.Supp.2d 113, 125 (E.D.N.Y. 1998).

This burden requires the plaintiff to make a showing beyond the minimal prima facie one sufficient to obtain the order of attachment in the first place. *See Seaplus*, 409 F.Supp.2d at 319. The plaintiff must, instead, demonstrate that "reasonable grounds" exist for the attachment – that is, it is *likely* the alleged facts are true and it has probable cause for asserting them. *See Ullises*

*Shipping Corp.,* 415 F. Supp. 2d at 322-23; *Wajilam Exports (Singapore) Pte Ltd. v. ATL Ship,* 2006 AMC 2744 (S.D.N.Y. 2006) (courts have compared the showing required in a "reasonable grounds" analysis to the more familiar standard of probable cause).

To sustain an attachment, a plaintiff must therefore show that it has satisfied the filing and service requirements of the rules and that there is probable cause supporting that (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd,* 460 F.3d at 445. If a plaintiff fails to demonstrate that it has met any of these requirements, the district court must vacate the attachment. *Aqua Stoli,* 460 F.3d at 445; *See also Maersk, Inc. v. Neewra, Inc.,* 443 F.Supp.2d 519 (S.D.N.Y. 2006) ("[t]he plaintiff must demonstrate that…all technical requirements for effective attachment have been met"); *DS Bulk PTE, Ltd. v. Calder Seacarrier Corp.,* 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006) (vacating attachment that failed to meet all technical requirements); *Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd.,* 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) (same).

Further, a district court also has authority to vacate an attachment "upon a showing of 'any improper practice' or 'manifest want of equity on the part of the plaintiff.'" *See, e.g., Maersk, Inc.,* 443 F.Supp.2d at 528 (citing *Blake Maritime, Inc. v. Petrom S.A.,* 2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. Oct. 31, 2005)); *see also Advisory Committee Notes to Rule E* (1985 Amendment) ("Rule E(4)(f) is designed to…[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings").

In the instant case, the order of attachment should be vacated in its entirety because the two claims based upon which Plaintiff CAI obtained the order have been eliminated and thus CAI cannot satisfy its burden of proving a prima facie maritime claim against the Defendants. Further, and as an alternative, the order should be vacated as to all defendants except Defendant Megafeeder because the reference to the "group" was insufficient as a matter of law to bind the purported entities forming that group. Finally, the attachment order should be vacated as to Mr. Khan because CAI's allegations that Mr. Khan is the alter ego of the corporate parties to the contracts are insufficient as a matter of law to sustain an attachment under an alter ego theory. Each of these grounds is discussed below in Points II – IV, respectively.

**POINT II**

**THE CLAIMS UPON WHICH CAI OBTAINED
THE ATTACHMENT ORDER HAVE BEEN SATISFIED.**

As explained above, the order of attachment in this case authorized the restraint of defendants' property in an amount up to and including $7,890,026, which is comprised of the following claim items: (1) $358,026 for rental and lease related charges; and (2) $7,532,000 for replacement value of containers. Both of these claim items have now been satisfied and as such the bases upon which the attachment order was granted have been extinguished.

As confirmed by the Declaration of Mr. Khan, all accrued rental charges have been paid to date. A transfer in the amount of U.S. $392,340.30 has been remitted and received by CAI. Thus, the claim for accrued rental charges which served as one of the two bases for the attachment order has been eliminated. (*See* Ex. A: Khan Decl.).

Secondly, and as confirmed by the Declaration of Kamran Saeed, Megafeeder has issued release orders to all container depots where the CAI containers were located and thus has

transferred constructive possession and control of all the containers back to CAI. (Exhibit B: Saeed Decl. ¶¶ 3-4, & Ex. 1 thereto). Furthermore, CAI has regained physical possession of approximately 82% of the containers, as they have been actually delivered to CAI and/or its agents. (*Id.* at ¶¶ 5-6 & Ex. 2 thereto). Thus, the portion of the claim for the replacement value of the containers has been eliminated and the second basis upon which the attachment order was obtained has been eliminated.

In *OGI Oceangate,* 2007 U.S. Dist. Lexis 46841, the plaintiff obtained a Rule B attachment order against two entities alleging, among other things, that security was warranted for an alleged breach of a charter party, *i.e.* a demurrage dispute. The defendant, however, had previously paid plaintiff $45,000 in connection with disputes regarding dead-freight, demurrage and detention, and the plaintiff had thus already received $45,000. The court found that this payment by the defendant extinguished any valid *prima facie* claim for breach of the charter party, as the claim had been satisfied. Because the plaintiff did not have a valid *prima facie* claim for breach of the charter party, the attachment was vacated.

As in *OGI Oceangate*, the claims which served as the basis for the issuance of the attachment order here have been satisfied. Consequently, the attachment order should be vacated in its entirety.

**POINT III**

**IN THE ALTERNATIVE, THE COURT SHOULD VACATE THE ATTACHMENT AS TO ALL DEFENDANTS EXCEPT MEGAFEEDER (PRIVATE) LIMITED BECAUSE THE LEASE AGREEMENTS ON WHICH THE ATTACHMENT IS BASED ARE UNENFORCEABLE WITH RESPECT TO THE "MEGA & FORBES GROUP OF COMPANIES."**

As an alternative ground for vacating the attachments, this Court could conclude that CAI has failed to carry its burden of proving that any of the defendants other than Megafeeder (Private) Limited are liable under the two lease documents that form the basis of this action.

The leases are both supposed to be governed by California law. (Rotenberg-Schwartz
Decl., May 10, 2007, Exhibits A and B, at 9 and 10, paragraph 11 (a)). Under California law, the
parties to a contract need to be identified with reasonable certainty. Cal. Civ. Code § 1558
(2007). ("It is essential to the validity of a contract, not only that the parties should exist, but that
it should be possible to identify them.") In the two leases here, one of the lessees, "Mega &
Forbes Group of Companies," is not identified with reasonable certainty. Because the drafter of
the leases, CAI, failed to identify what was meant by the term "Mega & Forbes Group of
Companies," and because any questions about the interpretation of the lease agreements should
be resolved against CAI, drafter of the leases, *Interpetrol Bermuda Limited v. Kaiser Aluminum
International Corporation*, 719 F.2d 992 (9th Cir. 1983), this Court should hold that the leases
are unenforceable with respect to the Mega & Forbes Group of Companies.

### A. CAI failed to clarify what was meant by the term "Mega & Forbes Group of Companies."

CAI, which prepared the first draft of the lease on May 4, 2006, chose to list the lessee as
"Mega & Forbes Group of Companies." At that time, CAI recognized the need to "clarify" who
the actual parties to the lease would be. **[E-mail from Susan Fox of CAI to CAI agent Tony
Lee (May 4, 2006, 08:59) (Gutowski Decl., Exhibit A)** ("information looks promising but *we
need to clarify the actual lessee*....Is 'Mega & Forbes Group of Companies' a registered
company name?") (emphasis added).

In fact, the "Mega & Forbes Group of Companies" is not a legal, corporate or juridical
entity. Nevertheless, despite recognizing the need to do so, CAI never did clarify precisely what
was meant by the "Mega & Forbes Group of Companies." Instead, CAI's final draft of the lease
documents simply carried through the vague term "Mega & Forbes Group of Companies" and

added "Megafeeder (Private) Limited" as a co-lessee.   The identity and composition of the first

lesssor, "Mega & Forbes Group of Companies," was thus left as an ambiguous term.

**B. CAI cobbled the list of defendants together for this lawsuit from "a variety of sources," not from the leases themselves.**

When the time came to file this lawsuit, CAI cobbled together a list of companies,

alleging in paragraph 5 of its Verified Complaint that "The Mega & Forbes Group of Companies

includes all the defendants shown in the caption of this Complaint."   The documents submitted

to this Court by CAI do not support the allegation that all of the 26 corporate defendants are

included in the "Mega & Forbes Group of Companies."

The uncertainty and ambiguity concerning the term "Mega & Forbes Group of

Companies" is concede by CAI's counsel.  In email response to our inquiry asking how the

individual entities identified in the Complaint were compiled, CAI's counsel explained that CAI

had to conduct an "investigation" to identify the parties that are liable under the leases, and had

to get them from "various sources":  "We got them *from various sources* as a result of our

investigation." **[E-mail from Charles Donovan to Peter Gutowski (June 28, 2007, 09:41),**

**Gutowski Decl., Exhibit B]**. In other words, the identities of the lessees, other than Megafeeder,

were not readily apparent from the leases themselves.  CAI's counsel's email shows that CAI is

still uncertain of what is meant by the term "Mega & Forbes Group, asking "Did we miss any?"

**C. Contracts with vague parties can not be enforced.**

In other jurisdictions, courts that have been faced with contract claims against similarly

vague parties have concluded that the contract is unenforceable.  *See, e.g. Shofler v. Jordan*, 284

S.W.2d 612, 614 (Mo. App. 1955) ("there can be no enforceable agreement unless the

contracting parties may be identified with reasonable certainty"); *Clark v. Great Northern Ry.*

*Co. et al.*, 81 F. 282, 283 (D. Wash. 1897) ("a promise by a multitude, or an indefinite and unidentified number of individuals, to jointly do a particular thing, cannot be enforced").

In *Clark*, the vague contracting party was the "people of Spokane." A railway company sued to enforce an agreement by the "people of Spokane" to furnish a right of way through the city. *Clark*, 81 F. at 283. The district court concluded that the contract was unenforceable because it was too indefinite and uncertain as to the parties involved. Notably, the court focused on, among other issues, the uncertainty concerning *when* the identity of those liable under the contract would be determined: it was uncertain whether the agreement included only the people of Spokane actually present at the time of contract formation, people living in Spokane at the time of contract formation who later moved out, or all people who ever came into Spokane, whether at the time of contract formation or later. Because the identify of those liable was not clear, the contract could not have the element of mutuality of obligation which is required in any contract in order for it to be enforced. *Id.*

In *Shofler*, the Missouri Court of Appeals noted that an oral statement by a third party that "we will take of you" may not satisfy the requirement that the parties to the alleged agreement were identified with reasonable certainty. *Shofler*, 284 S.W.2d at 614. Although the court did not rest its decision upon the uncertainty or indefiniteness as to the contracting parties, the court did conclude that the contract was void because there was insufficient meeting of the minds and too much ambiguity in general. *Id.*, at 615-16.

Here, the use of the term Mega & Forbes Group in the Leases is analogous to the vague term the "people of Spokane" or the vague promise that "we will take care of you." This Court should not allow CAI to enforce the contract against any company that CAI now chooses to allege 'are part of the Mega & Forbes Group of Companies.

**D. If there was a ratification of the leases, the ratification was only by Megafeeder, not by all 27 of the defendant companies.**

CAI has argued that there is a contract by ratification, based on the taking of possession of the containers and the lease payments to CAI. If there was any ratification at all, it was by Megafeeder (Private) Limited, the second lessor listed in the lease, who admittedly did take possession of the containers (and which has now released them back to CAI). There is no evidence that the other 26 defendant companies ever received any benefits from the leases.

If the shoe were on the other foot, it is likely that CAI would object if any one or all of the 26 other corporate defendants sought to file an individual action against CAI. The lease itself is inconsistent with CAI's assertion that all of the corporate defendants are individually liable and also individually beneficiaries of the leases. CAI included a provision against subleasing in the leases which *prohibits* the lessee from assigning any of the containers to another company without CAI's consent. (Rotenberg-Schwarz Decl., Exhibits. A and B at 9 and 10, paragraph 10a). Under CAI's theory of liability, any of the companies listed as defendants could have been assigned the containers by Megafeeder without the consent of CAI. This is inconsistent with the purpose of the anti-subleasing clause, and therefore supports the conclusion that the parties could not have intended that all 26 of the defendant companies would be parties to the leases.

As for the lease payments, the only reason that Mr. Khan, and one defendant, Forbes Forbes Campbell & Co. (Private) Limited, made the actual payments to CAI was because of Pakistani currency export restrictions on payments outside of Pakistan[2]. **[*See*, Khan Decl.].** Neither Mr. Khan nor Forbes Forbes Campbell & Co. received the containers or received any

---

[2] Mr. Khan, Chairman of Megafeeder, paid several of the invoices from CAI through his own personal account, and once through the account of Forbes Forbes Campbell & Co. (Private) Limited, because Megafeeder itself is not able to export currency under Pakistani currency regulations. **[Khan Decl.].**

benefit of the leases. Therefore CAI cannot rely on *post hoc* acceptance of the leases by all of the defendant companies.

**E. The leases are therefore unenforceable with respect to Mega & Forbes Group.**

CAI failed in its obligation as drafter to identify the "Mega & Forbes Group of Companies" with reasonable certainty. As a matter of law, the leases are not enforceable with respect to Mega & Forbes Group. Because Megafeeder is still a party to the Leases, CAI still has an avenue of recourse for the alleged breach of contract. But the Court should vacate the attachment as to the other corporate defendants that CAI now claims are part of the Mega & Forbes Group.

**POINT IV**

**THE ATTACHMENT ORDER
SHOULD BE VACATED AS TO MR. KHAN.**

CAI obtained the order of attachment against Mr. Khan solely on the basis of allegations that he is the Managing Director/Chairman of the corporate defendants, is an officer and shareholder of the defendants and made eight payments under the contracts in his own name. (*See* Amended Complaint ¶¶ 16-18). CAI alleges that Mr. Khan is thus jointly and severally liable under the Contract. (*Id.* at ¶19). CAI is thus claiming that the corporate veil should be pierced and Mr. Khan held liable as a defendant because he is the alter ego of the corporate entities.[3] CAI's allegations are, however, insufficient to establish its probable cause burden to sustain the attachment as to Mr. Khan.

---

[3] CAI also alleges that Mr. Khan is the "paying agent" of the defendants, but again the only support for this allegation is the purported payments from Mr. Khan on behalf of Megafeeder. As explained herein, there is a legitimate reason why Mr. Khan made these payments. (Ex. A: Khan Decl.). Further, even if the payments were sufficient to support an allegation that he is the "paying agent" of Megafeeder, there is no allegation at all that he is the paying agent of any of the other defendants. Further, "paying agent" status does not make the agent a defendant to the underlying claim. The "paying agent" allegation is thus insufficient to support the naming of Mr. Khan.

Federal courts sitting in admiralty apply federal common law when examining corporate identity." *Status Int'l S.A. v. M&D Mar. Ltd.*, 994 F.Supp. 182, 186 (S.D.N.Y. 1998). Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own." *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261 (S.D.N.Y. 2007); *Holborn Oil Trading Ltd. v. Interpetrol Bermuda, Ltd.*, 774 F.Supp. 840, 844 (S.D.N.Y. 1991) (quoting *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)).

The Second Circuit has identified a number of factors that are relevant in evaluating alter ego claims: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities. *See MAG Portfolio Consultant GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

In a Rule B context, Judge Sweet recently addressed whether the plaintiff's allegations of alter ego were sufficient to uphold an attachment against a corporate entity which had paid the debts of another company. In *Dolco*, Judge Sweet explained:

> When not based on fraud, "veil-piercing claims are generally subject to the pleading requirements imposed by Fed.R.Civ.P.8(a), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508,

13

512 (S.D.N.Y. 2005) (citing *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 122 (S.D.N.Y. 1996)). Suits in admiralty are subject as well to Fed.R.Civ.P.Supp. Rule E(2) (a), which provides that: In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading. Fed.R.Civ.P.Supp.Rule E(2)(a).

"This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. Barge KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules"). To survive a motion to dismiss, Dolco "need only allege sufficient facts to support an inference that [GML] has so dominated and disregarded [Moonriver's] form" that GML, rather than Moonriver, conducted Moonriver's business. *Wajilam*, 2006 U.S. Dist. LEXIS 77033, at *20.

Dolco fails to meet this burden because it has not included any factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco "from time to time." ... Under the heightened standard of Fed. R. Civ. P. Supp. Rule E(2)(a), more is required.

*See Dolco Invs.*, 486 F. Supp. 2d at 261.

In the instant case, CAI does not allege Mr. Khan used the corporate defendants as alter egos to perpetrate a fraud or so dominated and disregarded the corporate form that he was actually carrying on his own personal business instead of that of the corporate entities. CAI simply alleges that Mr. Khan was an officer, director and shareholder of the corporate entities, but something more is required. CAI attempts to satisfy the "something more" by pointing to the payments made by Mr. Khan. As explained in Mr. Khan's Declaration, however, the payments were made from his account because of the foreign currency regulations of Pakistan. (*See* Ex. A: Khan Decl.). Thus, there is a legitimate reason for the payments from Mr. Khan's account, and they do not demonstrate, as CAI implies, that Mr. Khan is the alter ego of the corporate

defendants.  CAI alleges nothing else, and it has no evidence to support any suggestion that Mr.

Khan has used the corporate form such that the veil should be pierced of the corporate

defendants and his assets restrained.  The attachment should be vacated as to Mr. Khan.

## CONCLUSION

For the above reasons, the attachment order should be vacated against all defendants

because the claims upon which the order was based are satisfied.  Alternatively, the attachment

order should be vacated as to all defendants other than Defendant Megafeeder.  Finally, and in

the further alternative, the attachment order should be vacated as to Mr. Khan.

Respectfully submitted,

FREEHILL HOGAN & MAHAR LLP
Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)
80 Pine Street
New York, NY  10005
(212) 425-1900
Attorneys for Defendant
MSC PAKISTAN (PRIVATE) LIMITED

FOALY HOAG LLP
Janis Brennan
Philip Swain
1875 K Street, NW
Washington, D.C.  20006
Tel:  202-223-1200
Fax:  202-785-6687

TO:    SHEPPARD MULLIN RICHTER & HAMPTON LLP
       30 Rockefeller Plaza
       Suite 2400
       New York, New York  10112
       Attn:  Elizabeth M. Rotenberg-Schwartz

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Ctr, 17th Floor
San Francisco, CA 94111-4106
Attn:  Charles S. Donovan