Elizabeth M. Rotenberg-Schwartz (ER 2607)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAI INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MEGAFLEET (PRIVATE) LIMITED, INSHIPPING (PRIVATE) LIMITED, INSHIP (PRIVATE) LIMITED, INSERVEY PAKISTAN (PRIVATE) LIMITED, MEGAIMPEX PAKISTAN (PRIVATE) LIMITED, MEGA IMPEX (PRIVATE) LIMITED, MEGATECH (PRIVATE) LIMITED, MEGATRANS PAKISTAN (PRIVATE) LIMITED, INTRA 21 (PRIVATE) LIMITED, INTRA TWENTY ONE (PRIVATE) LIMITED, MSC PAKISTAN (PRIVATE) LIMITED, FORBES FORBES CAMPBELL & CO (PRIVATE) LIMITED, M-LOG (PRIVATE) LIMITED, FORBES SHIPPING (PRIVATE) LIMITED, FORBES LATHAM (PRIVATE) LIMITED, FORBES TELECOMMUNICATIONS (PRIVATE) LIMITED, FORBES TELECOM (PRIVATE) LIMITED, MEGATRAVEL PAKISTAN (PRIVATE) LIMITED, SEACON (PRIVATE) LIMITED, SEALOG (PRIVATE) LIMITED, SEAEXPRESS (PRIVATE) LIMITED, FORBES LOGISTICS (PRIVATE) LIMITED, FORBES LOGICOM (PRIVATE) LIMITED, MEGARAIL (PRIVATE) LIMITED, MEGATRANSPORT (PRIVATE) LIMITED, FORBES SHIPPING COMPANY (PRIVATE) LIMITED, M. HABIBULLAH KHAN, MEGAFEEDER (PRIVATE) LIMITED, <br>                    Defendants. | No. 07-CV-3728(LLS) <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MSC PAKISTAN (PRIVATE) LIMITED'S MOTION TO <u>VACATE RULE B ATTACHMENT</u>** |

**PRELIMINARY STATEMENT AND FACTUAL BACKGROUND**

The facts relevant to this opposition are set forth in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Vacate the Order of Maritime Attachment, dated June 22, 2007, the accompanying Declaration of Elizabeth M. Rotenberg-Schwartz, dated June 22, 2007, ("June 22 Rotenberg-Schwartz Decl.") and the Declaration of Victor M. Garcia, dated July 15, 2007, ("Garcia Decl.").[1]

**ARGUMENT**

**I**

**DEFENDANT'S MOTION SHOULD BE REJECTED OR, AT A MINIMUM, REJECTED AS TO ALL OTHER DEFENDANTS**

On or about May 19, 2007, Mr. Shams-ul-Islam sent a letter motion *ex parte* to the Honorable Louis Stanton stating that he represented all defendants in this action, excepting Mega Fleet (Private) Limited and Mega and Forbes Group of Companies, and requesting that the Court vacate the Order ("Letter Motion").  Docket No. 14.  On or about May 31, 2007, the Honorable Louis Stanton directed counsel to plaintiff CAI International Inc.("CAI") to respond to the Letter Motion on or before June 22, 2007.  Docket No. 15.  On or about June 22, 2007, CAI filed its opposition to defendants' Letter Motion.  Docket Nos. 8-11.  The Letter Motion is currently pending before this Court.  On July 12, 2007, defendant MSC Pakistan (Private) Limited ("MSC") filed the present motion seeking to vacate the Order on behalf of all defendants.

Parties are not permitted to simultaneously file multiple motions for the same relief.  Gill v. Monroe County Dept. of Social Services, 873 F.2d 647, 648-49 (2d Cir. 1989) (affirming

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Rotenberg-Schwartz and Garcia Declarations.

order denying successive motion for preliminary injunction because motion was simply the same as earlier motion); Leeson v. Merck & Co., Inc., No. S-05-2240 WBS PAN, 2006 WL 3230047, at *4 (E.D. Cal. Jan. 27, 2006) ("[defendant] should not have to defend against the same motion repeatedly brought by the same plaintiff"). Therefore, defendants' present motion should not be heard.

In the event this Court determines that it may hear the present motion, CAI requests that it be rejected as to all other defendants excepting MSC. Counsel to one defendant may not move on behalf of a co-defendant. Codapro Corp. v. Wilson, 997 F.Supp. 322, 326-27 (E.D.N.Y. 1998) (denying motion because attorney was not permitted to file motion on behalf of co-defendants that he was not representing). On or about June 6, 2007, counsel to defendant MSC entered a notice of Restricted Appearance Pursuant to Rule E(8). Docket No. 7. While counsel to MSC amended its appearance on or about June 25, 2007, see Docket Nos. 12-13, at no time have they appeared on behalf of *any* of the other defendants. Therefore, it is improper for MSC's counsel to move to vacate the Rule B attachment as to any other party besides MSC and this Court should only consider MSC's motion in its behalf.

## II

### DEFENDANT'S MOTION TO VACATE THE ORDER OF ATTACHMENT SHOULD BE DENIED

MSC has not contested that they cannot be found within the district or that the attached property was within the district. Nor has MSC asserted that there is a statutory or maritime law bar to the attachment. Rather, MSC argues that CAI currently has no valid *prima facie* admiralty claim against MSC.

**A.    CAI Has Satisfied And Continues To Satisfy Its
Burden Of Proving A Prima Facie Maritime Claim.**

MSC claims that the attachment CAI obtained in this action should be vacated because the "claim items have now been satisfied and as such the bases upon which the attachment order was granted have been extinguished." Def.'s Mem. at 6. This is simply false. See Garcia Decl. at ¶ 3. For example, MSC claims that "CAI has regained physical possession of approximately 82% of the containers, *as they have been actually delivered to CAI and/or its agents.*" Def.'s Mem. at 7 (emphasis added). However, defendants did not deliver *any* containers to CAI, despite the fact that the agreements obligate defendants to return the containers to CAI at the end of the lease term at certain designated depots, in certain maximum quantities in particular ports, with maximum amounts per month. Garcia Decl. ¶ 4. Instead, CAI has been forced to recover the containers itself, which resulted in additional recovery costs including paying storage charges for the equipment which was owed by defendants to the various depots where the containers were being stored, paying for repositioning costs, and paying for drayage. Id. at ¶ 4e.

The claims in this case, upon which the order of attachment was granted, are based upon various provisions in Lease Agreements which provide for damages in the event of a breach of the agreements, including, but not limited to, lost future revenues, remarking costs, replacement value of special open-tops, repair costs, recovery costs, replacement value of unreturned containers, attorneys' fees, and service charges. Id. at ¶ 4. As of Friday, July 13, 2007, CAI had still not recovered 443 of the 2,488 containers it had leased to defendants. Id. at ¶ 3. While defendants recently made a comparatively small payment on account of $392,340.30, they are still indebted to CAI for substantial sums under the Lease Agreements which, at the moment, amounts to over $6 million as follows:

$1,206,262    Net lost future revenue - 2000 20' Dry van containers

| | |
|---|---|
| $293,325 | Net lost future revenue - 250 40' High cube containers |
| $477,537 | Net lost future revenue - 238 20' Open-top containers |
| $497,600 | Remarking 2488 "MEGA" to "CAI" @ $200 |
| $517,500 | Replacement value of 75 specially manufactured 40' Open-top @ $6900 |
| $497,600 | Repair costs per container 2488 containers @ $200 |
| $248,800 | Container recovery costs 2488 containers @ $100 |
| $150,000 | Attorneys fees in Pakistan and U.S. |
| $1,134,580 | Depreciated replacement value of unreturned containers |
| $1,356,265 | Service charge @ 18% for 18 months |
| $6,379,469 | TOTAL |

Id. Each of the above line items of CAI's claim is explained in detail in the Garcia Decl. at ¶ 4.

Based upon the foregoing, CAI clearly maintains a *prima facie* maritime claim against defendants. CAI recognizes that a portion of its claim has been satisfied and, therefore, has no objection to reducing the amount of its attachment to $6,400,000.00, which is an amount adequate to secure its eventual judgment against defendants.[2]

**B.    The Lease Agreements On Which The Attachment Is Based Are Enforceable With Respect To The Mega & Forbes Group Of Companies.**

As CAI has previously argued, Khan negotiated the Lease Agreements on behalf of both the Mega & Forbes Group and Megafeeder (Private) Limited ("Megafeeder") and Mr. Shakeel Hyder executed the Lease Agreements on their behalf.[3] Pl.'s Mem. of Law in Opp'n to Letter

---

[2]    To date CAI's attachment has netted funds of only $225,172.13. Garcia Decl. at ¶ 5.

[3]    Based upon information obtained during the negotiations, the Lease Agreements were not vague. As pointed out by MSC, On or about May 4, 2006, Ms. Susan Fox sought clarification from defendants regarding the lessee(s). Declaration of Wan Hee Lee, dated June 22, 2007 ("Lee Decl."), Ex. B at 1. Subsequently, on or about May 10, 2006, Ms. Fox's inquiries were (footnote continued)

Motion (Docket No. 8) at p. 5. Before filing the Complaint, CAI reviewed the defendants' website, whose content was conveniently removed from the internet subsequent to the filing of this suit. Declaration of Elizabeth M. Rotenberg-Schwartz, dated July 15, 2007 ("July 15 Rotenberg-Schwartz Decl.") at ¶ 5. On their website, defendants clearly assert that all of the named defendants comprise the Mega & Forbes Group of Companies ("Mega & Forbes Group"). See id. at Exs. B, C. Thus, Khan was clearly representing the entire Mega & Forbes Group which consists of all of the named defendants, excepting Khan, based upon *their own representations*.[4] Pl.'s Mem. of Law in Opp'n to Letter Motion (Docket No. 8) at p. 5; National Ass'n. for Advancement of Colored People v. A.A. Arms, Inc., Nos. 99 CV 3999(JBW), 99 CV 7037(JBW), 2003 WL 2003797, at *2 (E.D.N.Y. Apr. 11, 2003) (finding that printouts from publicly available website were admissible); see also Telewizja Polska USA, Inc. v. Echostar Satellite Corp., No. 02 C 3293, 2004 WL 2367740, at *5 (N.D. Ill. Oct.15, 2004) (holding exhibits showing defendant's website as it appeared on a certain day were admissible as admissions against defendant); Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1109 (D. Or. 2000) ("the representations made by defendants on the website are admissible as admissions of the party-opponent under FRE 801(d)(2)(A)"). Moreover, as previously argued, the Lease Agreements were ratified by Khan on behalf of all the entities. Pl.'s Mem. of Law in Opp'n to Letter Motion (Docket No. 8) at p. 8-9.

---

answered and as a result, based upon the financial information CAI received from the Mega & Forbes Group, CAI insisted that they remain on the lease. Lee Decl. Ex. E at 1.

[4] As previously argued, even in the event Hyder did not have actual authority to enter into the Lease Agreements, he had apparent authority to do so. Pl.'s Mem. of Law in Opp'n to Letter Motion (Docket No. 8) at p. 7-8.

**C.     There Is No Basis To Vacate The Attachment As To Defendant Khan.**

MSC correctly asserts that there are a number of relevant factors that the Second Circuit examines in evaluating alter ego claims. Def.'s Mem. at p. 13. Of the factors cited by MSC, CAI has shown that (i) defendants have overlapping ownership, officers, directors, and personnel (see July 15, 2007 Rotenberg-Schwartz Decl at Exs. A, C); (ii) defendants share common office space, address and telephone numbers of corporate entities (see Schedule B to Civil Cover Sheet); and (iii) Khan paid the debts of the Mega & Forbes Group (see Declaration of Frederic Bauthier, dated June 22, 2007 at ¶ 3). Since CAI has adequately alleged that this Court should pierce the corporate veil as to Khan, the attachment as to Khan should not be vacated. Fesco Ocean Magmt. Ltd. v. High Seas Shipping Ltd., No. 06 Civ. 1055, 2007 WL 766115, at *3-4 (S.D.N.Y. Mar. 12, 2007) (finding defendant alter ego of another company and veil should be pierced where companies overlap officers and directors, have offices at the same address, and intermingled funds).

## CONCLUSION

The Court should deny MSC's Motion to Vacate Rule B Attachment in its entirety.

Dated: July 15, 2007

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By    /s/
Elizabeth M. Rotenberg-Schwartz (ER 2607)
30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800 (Tel.)
(212) 332-3888 (Fax)

*Attorneys for Plaintiff CAI International, Inc.*