Elizabeth M. Rotenberg-Schwartz (ER 2607)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAI INTERNATIONAL, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>MEGAFLEET (PRIVATE) LIMITED, INSHIPPING (PRIVATE) LIMITED, INSHIP (PRIVATE) LIMITED, INSERVEY PAKISTAN (PRIVATE) LIMITED, MEGAIMPEX PAKISTAN (PRIVATE) LIMITED, MEGA IMPEX (PRIVATE) LIMITED, MEGATECH (PRIVATE) LIMITED, MEGATRANS PAKISTAN (PRIVATE) LIMITED, INTRA 21 (PRIVATE) LIMITED, INTRA TWENTY ONE (PRIVATE) LIMITED, MSC PAKISTAN (PRIVATE) LIMITED, FORBES FORBES CAMPBELL & CO (PRIVATE) LIMITED, M-LOG (PRIVATE) LIMITED, FORBES SHIPPING (PRIVATE) LIMITED, FORBES LATHAM (PRIVATE) LIMITED, FORBES TELECOMMUNICATIONS (PRIVATE) LIMITED, FORBES TELECOM (PRIVATE) LIMITED, MEGATRAVEL PAKISTAN (PRIVATE) LIMITED, SEACON (PRIVATE) LIMITED, SEALOG (PRIVATE) LIMITED, SEAEXPRESS (PRIVATE) LIMITED, FORBES LOGISTICS (PRIVATE) LIMITED, FORBES LOGICOM (PRIVATE) LIMITED, MEGARAIL (PRIVATE) LIMITED, MEGATRANSPORT (PRIVATE) LIMITED, FORBES SHIPPING COMPANY (PRIVATE) LIMITED, M. HABIBULLAH KHAN, MEGAFEEDER (PRIVATE) LIMITED,<br>        Defendants. | No. 07-CV-3728(LLS)<br><br><br><br>**DECLARATION OF VICTOR M. GARCIA IN OPPOSITION TO DEFENDANT MSC PAKISTAN (PRIVATE) LIMITED'S MOTION TO VACATE**<br>**RULE B ATTACHMENT** |

I, **VICTOR M. GARCIA**, declare as follows:

1. I am the Senior Vice President and Chief Financial Officer of CAI International Inc. ("CAI").

2. I submit this declaration in response to the motion of MSC Pakistan (Private) Limited ("MSC Pakistan") to vacate the attachment CAI has obtained in this action. MSC Pakistan makes two main contentions: (1) "the claims on which CAI obtained its attachment have essentially been settled;" and (2) "all of the CAI containers have been released back to CAI and the great majority of them have actually been picked up and placed back into CAI's service." Peter J. Gutowski Letter to the Court, July 13, 2007.

3. The first contention is flatly false. The second overstates the present situation. As of Friday, July 13, 2007, CAI had still not recovered 443 of the 2,488 containers it had leased to defendants. Defendants, we believe under pressure from the attachment in this action, recently made a comparatively small payment on account of $392,340.30. They are still indebted to CAI for a substantial sums under the two lease agreements[1] between defendants and CAI which, at the moment, amounts to over $6 million:

| | |
|---|---|
| $1,206,262 | Net lost future revenue - 2000 20' Dry van containers |
| $293,325 | Net lost future revenue - 250 40' High cube containers |
| $477,537 | Net lost future revenue - 238 20' Open-top containers |
| $497,600 | Remarking 2488 "MEGA" to "CAI" @ $200 |
| $517,500 | Replacement value of 75 specially manufactured 40' Open-top @ $6900 |

---

[1] These two lease agreements are Exhibits A and B to the Declaration of Elizabeth Rotenberg-Schwartz in Support of Ex Parte Right to Attach Order and Order for Issuance of Writ of Attachments, already on file in this Action. They contain many identical provisions. This Declaration will refer to them both as the "Lease Agreements," to Exhibit A as "MEGA-001," its CAI Reference code, and to Exhibit B as "MEGA-002."

$497,600         Repair costs per container 2488 containers @ $200

$248,800         Container recovery costs 2488 containers @ $100

$150,000         Attorneys fees in Pakistan and U.S.

$1,134,580       Depreciated replacement value of unreturned containers

$1,356,265       Service charge @ 18% for 18 months

$6,379,469       TOTAL

    4. I will explain each line item of CAI's claim.

        a. *Lost future revenue.* The first three line items are lost future revenue. The Lease Agreements are "long term" contracts in which defendants took the containers on lease for ten years. Because of defendants' breach, CAI was forced to terminate the Lease Agreements after less than one year, which it did by notice dated April 13, 2007. Initially, defendants refused to allow CAI access to its own equipment. With defendants under pressure from legal action here and in Pakistan, CAI began to recover the equipment just in the past several weeks. It will take time to remarket the 2,488 containers. The daily rental rate per container under the long-term contracts was $.75 per 20-foot dry-van container (MEGA-001, p.2, ¶5), $1.28 per 40-foot high-cube container (MEGA-001, P2, ¶5) and $1.60 per 20-foot open-top container (MEGA-002, P.3, ¶5). In today's market, CAI can lease out these containers for approximately $.55 per 20-foot, $.88 per 40-foot and $.88 per 20-foot open top containers. This results in net lost future revenue (reduced to net present value) of:

>$1,206,261.75 for the 2,000 20-foot containers;
>
>$293,324.87 for the 250 40-foot containers; and
>
>$477,537.45 for the 238 20-foot open-top containers.

b. *Remarking cost.* At defendants' request, the containers were marked with defendant's name - "MEGA" - and in the colors of the MEGA & Forbes Group of companies. CAI has remarked the containers it has recovered and will remark additional containers as it recovers them at a cost of about $200 per container.

c. *Replacement value of special open-tops.* Among the containers defendants leased were 75 40-foot open-top containers. These were manufactured to defendants' specifications and are not a "standard" container that CAI can lease to other customers. I believe defendants had in mind a particular use for them peculiar to the trade in which they operate, perhaps to suit the needs of a single customer of theirs. Oddly enough, defendants never picked these containers up from the factory where they have been waiting for defendants since mid-2006. Once defendants have paid for them, CAI is prepared to release these containers to defendants. The agreed value under MEGA-002 is $6,900 for these 75 containers, totaling $517,500. MEGA-002, p.5, ¶11.c.

d. *Repair costs.* The agreements required defendants to keep the containers in good repair. Lease Agreements ¶9. This they have failed to do in breach of the contracts. The cost to repairs the containers CAI has been recovering has averaged approximately $200 each.

e. *Recovery costs.* The agreements obligate defendants to return the containers to CAI at the end of the lease term at certain designated depots, in certain maximum quantities in particular ports, with maximum amounts per month. MEGA-001, Exh. B; MEGA 002, Exh. B. Because of defendants' breach of the lease, CAI has been forced to terminate it early. To mitigate its damages, CAI has itself undertaken to do what defendants agreed to do – return the equipment to CAI's depots. This has entailed several types of expenses. The first is storage charges. CAI has found the containers in depots where defendants stored them. Defendants generally have not been paying the depots for storage of the containers. The depots have refused to release the containers to CAI until CAI has paid the storage charges defendants owe for the equipment. The second is repositioning costs. Most of the equipment CAI has recovered is in Karachi, Pakistan. CAI is unable to lease out a large volume of equipment there. To lease out the equipment CAI must reposition it to India or China where market conditions are presently better. The third type of expense is drayage. To move the containers from defendants' depots to CAI depots or to terminals where the containers can be loaded on ships for repositioning, CAI has incurred trucking and other charges related to the movement of the containers. Per container, these costs have averaged about $100.

f. *Replacement value of unreturned containers.* CAI still has not recovered 378 20-foot dry-van containers, 52 40-foot high-cube

containers, and 13 20-foot open-top containers as of Friday, July 13, 2007. The Lease Agreements obligate defendants on termination to notify CAI of the location of CAI's equipment and allow CAI to recover its containers. Lease Agreements, Exh. A, ¶5. This they have failed utterly to do. In fact, they have not returned a single CAI container. Initially, defendants actively impeded those efforts by refusing to instruct their depots to release the containers. Under the threat of this action and the Pakistani action, they have finally stopped impeding CAI's recovery efforts. Still, there is a substantial possibility CAI will not be able to recover some of the remaining containers. How many only time will tell. At the moment, CAI seeks recovery for the containers still unreturned, which the Lease Agreements set at $2,500 per 20-foot dry-van container ($945,000 for the remaining 378 of these), $4,250 for 40-foot open-top containers ($210,000 for the remaining 52 of these), and $4,000 for 20-foot open-top containers ($52,000 for the remaining 13 of these). Lease Agreements ¶11.c. This totals $1,207,000 for the unrecovered containers. The Lease Agreements provide of a depreciation rate of 6% per annum on these values (id.), which, with one year's depreciation, would reduce this item to $1,134,580.

g. *Attorneys' fees.* The agreements obligate defendants to pay CAI's attorneys fees. CAI has commenced the instant action and a separate action in Pakistan to compel defendants to turn over CAI's equipment.

        The Pakistani action does not seek recover of money damages – only the containers.

    h.  *Service Charge.* The agreements provide for interest at the rate of 18% per annum. Lease Agreements, Exh. A, ¶2.d. CAI has included service charge on the claim for 18 months – the time CAI estimates it will take to conclude this action, including any appeals.

5.    The amounts I have stated for CAI's claim are based upon the best information presently available. As CAI recovers more equipment, repairs and re-marks what is has recovered, and puts it out on lease, CAI's claim will take more definite shape. We are optimistic CAI will recover most, if not all, of its containers. CAI would therefore have no objection to reducing the amount of its attachment to $6,400,000, which is an amount adequate to secure its eventual judgment against defendants. To date I understand CAI's attachment has netted funds of only $225,172.13.

I declare under penalty of perjury that the foregoing is true and correct.

Executed July 15, 2007 in San Francisco, California.

_____
Victor M. Garcia